INSURANCE COMPANY OF NORTH AMERICA, Relator,

v.

Honorable Mike WESTERGREN, Judge of the 214th District Court of Nueces County, Texas, Respondent.

No. 13–90–176–CV.

Court of Appeals of Texas, Corpus Christi.

June 29, 1990.

Rehearing Overruled July 31, 1990.

Russell Manning, John C. Holmgreen, Jr., Gordon D. Laws, Gary, Thomasson, Hall & Marks, Corpus Christi, for relator.

James R. Harris, Rita C. Berthelot, Harris & Thomas, Corpus Christi, for respondent.

Before KEYS, KENNEDY, and BENAVIDES, JJ.

## OPINION

KEYS, Justice.

In this mandamus action, the Insurance Company of North America (INA) asks this court to enter an order directing the Honorable Michael Westergren, Judge of the 214th District Court, to disqualify attorney James R. Harris and his law firm from representing Braselton Construction Company, the real party in interest in this case. We conditionally grant the writ.

In 1985, Braselton Construction Company entered into a construction contract with Harlingen Independent School District for the construction of a school. The project was bonded by a construction bond issued by the relator, Insurance Company of North America (INA). Pursuant to the bond, Braselton, as principal, agreed to indemnify INA, as surety, for any loss it sustained, including any amounts of expenses and attorneys fees. Problems developed on the project which resulted in Braselton filing suit for declaratory judgment, naming INA, the School District and mechanics and materialmen as parties. Thereafter, several subcontractors filed suit against Braselton. INA was obligated to pay these claims. Braselton remained liable on the costs, including attorney's fees. INA was named as a party in some of these lawsuits. It is undisputed that Harris signed pleadings on behalf of INA during the pendency of these lawsuits. All of the lawsuits involving the subcontractors were eventually consolidated into one cause number and settled. After final judgment was entered in the settled lawsuit, another materials supplier, AWC, filed a lawsuit against Braselton claiming a right to payment pursuant to the bond. Harris requested that INA allow him to represent both Braselton and INA in the defense of the AWC lawsuit in order to limit the amount of attorney's fees that Braselton would have to pay. Harris signed a pleading designating himself as attorney in charge. Later, when disagreements arose, Harris filed a motion to withdraw as counsel for INA.

Later, INA filed a lawsuit against Braselton to recover adjusted premiums for the liability insurance policies. This lawsuit was filed on October 31, 1988. Braselton counterclaimed for declaratory judgment on July 31, 1989. In its original counterclaim, Braselton sought a court declaration that it has satisfied all of its obligations under the contracts, and sought actual and exemplary damages and attorneys fees. Braselton alleges that INA acted in bad faith in failing to perform its obligations to Braselton. On December 22, 1989, Braselton filed its fourth amended

counterclaim, in which it specifically alleges that INA breached its duty of good faith and fair dealing by settling Braselton's lawsuit against the Harlingen school district. Braselton also pleaded that INA had breached its duty of good faith when it breached the administration agreement and an agreement involving the AWC case. These are the first pleadings that Braselton filed which specifically state that Braselton's allegations pertain to INA's behavior in the former lawsuits. On February 19, 1990, INA filed a motion to disqualify James Harris from representing Braselton because he had previously represented INA in the bond lawsuits. The trial court denied the motion to disqualify.

█ Two disciplinary rules are at issue here. Rule 1.06(d) states that a lawyer who has represented multiple parties in a matter shall not thereafter represent any of such parties in a dispute among the parties arising out of the matter, unless prior consent is obtained from all of the parties to the dispute. Rule 1.09(a) states that a lawyer who personally has formerly represented a client in a matter shall not thereafter represent another person in a matter adverse to the former client if it is the same or a substantially related matter. In *NCNB Texas National Bank v. Coker*, 765 S.W.2d 398 (Tex.1989), the Supreme Court set forth the test a trial judge must follow in determining whether an attorney is disqualified from representing a former client. The party moving for disqualification must prove the existence of a prior attorney-client relationship in which the factual matters involved were so related to the facts in the pending litigation that it creates a genuine threat that confidences revealed to former counsel will be divulged to the present adversary. *Id.* at 400. Sustaining this burden requires evidence of specific similarities capable of being recited in the disqualification order. If this burden can be met, the party is entitled to a conclusive presumption that confidences and secrets were imparted to a former attorney. By proving a substantial relationship exists, the party proves as a matter of law that an appearance of impropriety exists. *Id.* Mandamus will not issue in this case unless we find that the trial court abused its discretion. *Johnson v. Fourth Court of Appeals*, 700 S.W.2d 916, 917 (Tex.1985). The relator must establish that the the facts and law permit the trial court to make but one decision. *Id.*

EXISTENCE OF AN ATTORNEY CLIENT RELATIONSHIP

█ In order to prevail in this court, we must first determine if INA established an attorney-client relationship in the trial court. The disciplinary rules do not provide express guidelines for determining when the attorney-client relationship begins. The parties must manifest an intention to create such a relationship. *Parker v. Carnahan*, 772 S.W.2d 151, 156 (Tex. App.—Texarkana 1989, no writ). The attorney-client relationship itself is not difficult to establish, rather the duty owed is often the contested issue at trial. *Id.* At the disqualification hearing, relators introduced into evidence several pleadings which Harris signed on behalf of INA. These included an original answer in a pleading filed in the bond lawsuit, a motion to withdraw as counsel of record for INA in another case involving the school construction litigation, and a pleading filed in the AWC case in which Harris joined attorney Kemmy in designating Harris as the attorney in charge for INA. There were more than fifteen exhibits introduced at the disqualification hearing which Harris or a member of his firm signed on behalf of INA or INA and Braselton. Attorney Tom Kemmy testified at the disqualification hearing that Mr. Harris had previously represented INA in the school district project lawsuits until sometime in 1987, when his law firm took over. He said that he represented INA together with Harris in the AWC lawsuit. Harris testified that from time to time in his representation of Braselton and other contractors, he has represented the surety on merely a pro forma basis. He did not consider INA his client because INA did not pay for his representation. He testified that at no time did he receive confidential information from or give advice to INA.

We find, as a matter of law, that INA has shown an attorney-client relationship between INA and Harris. We may agree with Harris that it was merely an accommodation or a pro forma relationship, but we find nevertheless that it was indeed an attorney-client relationship. The duties or specifics of the relationship in this instance might well be disputed, but the fact that an attorney-client relationship existed is clear. We find nothing in the disciplinary rules which permits a pro forma representation of a client.

SUBSTANTIAL RELATIONSHIP TEST

■ The test set forth in *Coker* also requires the client to prove that the matters of the former relationship are substantially related to the factual matters involved in the present suit. *Id.* at 400. By proving the substantial relationship test, the moving party is entitled to a conclusive irrebutable presumption that confidences and secrets were imparted to the former attorney. *Id.*

The evidence showed that Harris' representation concerned both the combined third party bond lawsuits involving the school district construction and the later filed AWC lawsuit. Braselton charges in its fourth amended counterclaim that INA intentionally interfered with Braselton's settlement negotiations with the school district. It further alleged that the administration agreement between INA and Braselton was obtained without consideration and through economic duress. Braselton also claims that INA authorized it to pursue a course of action designed to dispose of the AWC case through a trial on the merits. Subsequently, according to Braselton, INA entered into an agreement with AWC in direct opposition to its agreement with Braselton. Braselton sought damages from INA in this regard. It is readily apparent that the two representations are substantially related. Braselton argues that Harris' representation, if any, involved third party bond claims. It argues that the counterclaim in issue concerns money owed to Braselton. While technically Braselton is correct, it is obvious that the suit now before the trial court is directly related to and stems from the actions of the parties in settling those very bond claims. We conclude that INA is entitled to the conclusive presumption set forth in *Coker* that confidences and secrets were imparted to Harris.

WAIVER

■ Braselton also claims that INA has waived its right to complain of Harris' representation. We find this argument without merit. Although the case had been pending in the trial court for some time prior to filing the motion to disqualify, the fourth amended counterclaim was not filed until December 22, 1989. This was the first time allegations concerning the bond claims had been specified. The motion to disqualify was filed on February 19, 1990. We find this case distinguishable from *Turner v. Turner*, 385 S.W.2d 230 (Tex. 1964), in which the party moving for disqualification had waited a period of 18 months between learning of the grounds for disqualification and moving for disqualification. Here, the motion was timely.

In sum, we find that INA met its burden under *Coker*. Based on the record, any discretion of the trial court was extinguished and it had no choice but to disqualify Harris from representing Braselton on its counterclaim. We assume that the Honorable Judge will vacate his orders of April 25, 1990, and April 30, 1990, denying disqualification and will order Harris disqualified from representing Braselton in its counterclaim concerning the bond claims and the AWC lawsuit. Mandamus will issue only if he refuses to comply. We conditionally grant INA's petition for writ of mandamus.