NO. 07-07-0242-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL D

AUGUST 27, 2008

______________________________


MARSHALL CAPPS, IN HIS CAPACITY AS THE GUARDIAN
 OF THE ESTATE OF LAZARO SANTA CRUZ, APPELLANT

V.

STATE OF TEXAS, BY AND THROUGH TEXAS DEPARTMENT
 OF STATE HEALTH SERVICES, APPELLEE

_________________________________

FROM THE COUNTY COURT OF WILBARGER COUNTY;

NO. 116; HONORABLE DON R. WINDLE, JUDGE




_______________________________

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.


MEMORANDUM OPINION

          Appellant, Marshall Capps, in his capacity as the Guardian of the Estate of Lazaro
Santa Cruz, appeals the trial court’s denial of his motion for summary judgment and the
rendition of summary judgment in favor of Appellee, the State of Texas, by and through the
Department of State Health Services, in Capps’s petition for bill of review which sought to
set aside an agreed judgment previously rendered in favor of Appellee, and his petition
seeking recovery of damages. By one issue, Capps asserts the trial court erred in granting
the State’s motion for summary judgment because (1) Santa Cruz had a meritorious
defense, (2) that he was prevented from asserting because of the State’s extrinsic fraud
and wrongful acts, and (3) the failure to raise his meritorious defense was not due to his
own fault or negligence. We affirm. 
Background
          In 1980, Santa Cruz was involuntarily committed to the care of the state hospital
system pursuant to provisions of the Texas Code of Criminal Procedure.


 For fourteen
years, he received Social Security benefits while the State acted as his representative
payee. During this period, the State used a portion of Santa Cruz’s Social Security 
benefits as compensation for his support, maintenance, and treatment. The remainder,
$57.00 per month, was received by Santa Cruz for his personal use. In addition, he earned
$400 per week working as a janitor in two state hospitals as part of their client work
program. Santa Cruz saved portions of his monthly personal allowance and janitorial
wages first in a client trust account through the State, and later through a private bank
account at the Citizens 1st Bank in Rusk, Texas. 
          From July 1988 through January 1996, Vernon State Hospital (VSH) notified Santa
Cruz of the amount of his monthly fee for support, maintenance, and treatment. The
charge was based, in part, on his monthly Social Security benefit and ran between $500
and $700 per month. In January 1996, Santa Cruz received his last notification indicating
his monthly fee was $704. 
          In July 1996, the Social Security Administration terminated Santa Cruz’s benefits. 
In January 1997, the State filed an application for the appointment of a guardian for Santa
Cruz’s estate. Six months later, Capps, an attorney licensed to practice law in Texas, was
appointed guardian. In December 1997, Capps filed an inventory indicating Santa Cruz
had accumulated $58,065.42 in his Citizens 1st Bank account. 
          In February 1998, VSH submitted a verified claim to Capps for $102,960
representing VSH’s costs for Santa Cruz’s support, maintenance, and treatment for the
year ending December 31, 1997. This claim was based on a monthly fee of $8,580. 
Capps did not act on the State’s claim within the thirty day period prescribed by statute and
the State filed a petition seeking payment. Capps responded with a general denial. 
Thereafter, the State filed requests for admission and later a motion for summary judgment
seeking full reimbursement. 
          In December 1998, four days prior to a hearing on the State’s motion for summary
judgment, Capps filed an application for authority to employ an attorney to file a petition
in bankruptcy on behalf of Santa Cruz’s estate. The trial court issued an order appointing 
Ronald Yandell and, three days later, Capps filed a petition in bankruptcy on behalf of
Santa Cruz.
          Two months later, in February 1999, Capps filed an application for authority to
dismiss the bankruptcy action and settle the State’s $102,960 claim for $43,000. The
application indicated Yandell advised Capps that accepting the State’s proposal of $43,000
would leave more property remaining in Santa Cruz’s estate than would remain if the
bankruptcy were pursued to conclusion. Capps’s application concluded that, accepting the
State’s offer, was in the estate’s “best interests,” “necessary and advisable to protect” the
estate and “provide the future care and support” for Santa Cruz.
          In March 1999, the trial court entered an agreed judgment approved and signed by
the State, Capps, and Yandell. The agreed judgment stated, in pertinent part, as follows:
At the hearing on this cause, the attorney of record for Plaintiff and the
attorney of record for Defendant announced to the Court that Plaintiff and
Defendant have agreed that judgment should be rendered for Plaintiff as
agreed, and in full settlement of claims made by the Plaintiff in its Original
Petition filed in this cause. Having considered the pleadings and official
records on file in this cause and the evidence, the Court is of the opinion,
and so finds, that it has jurisdiction of the parties and the subject matter
herein, and that Plaintiff has sustained the burden of proof thereon and
judgment should therefore be rendered for Plaintiff as agreed. PLAINTIFF
AGREES to compromise and settle its claim in the amount of $102,960.00
for the sum of $43,000, to be paid in full by the Defendant within thirty days
(30) after entry of judgment herein. IT IS THEREFORE ORDERED,
ADJUDGED AND DECREED by the Court that the State of Texas . . .
recover from the Estate of LAZARO SANTACRUZ, and MARSHALL CAPPS,
Defendant, in his capacity as guardian . . . the sum of $43,000 . . . . All relief
not expressly granted herein is denied.


(Emphasis added).

 
          In November 2000, Capps filed an application to employ an attorney to file the bill
of review which is the subject of this appeal. The trial court entered an order approving the
application and, a month later, Capps filed a petition to set aside the agreed judgment
between Capps and the State. In substance, the bill of review alleged that the State had
failed to advise Capps of the availability of a trust fund exemption


 and other safekeeping
procedures that may have sheltered a substantial portion of Santa Cruz’s estate from the
State’s claim for support, maintenance, and treatment. 
          The parties filed cross-motions for summary judgment and the trial court, the
Honorable Gary B. Streit presiding, denied Capps’s motion for summary judgment on his
second amended petition for bill of review and second amended petition. Capps then
moved for assignment of the action to a probate judge and the Honorable Don R. Windle
of the Denton County Probate Court, was assigned to hear the case. By agreement of the
parties, all claims being asserted by Capps were to be resolved by the resubmission of
Plaintiff’s Motion for Summary Judgment and Brief on Plaintiff’s Second Amended Petition
for Bill of Review and Plaintiff’s Second Amended Petition and by the consideration of
Defendant’s Motion for Summary Judgment and Defendant’s Response in Opposition to
Plaintiff’s Motion for Summary Judgment on Plaintiff’s Second Amended Petition, as a
cross-motion for summary judgment. In the Final Summary Judgment, Judge Windle
granted the State’s motion for summary judgment and denied Capps’s motion for summary
judgment without specifying the grounds upon which the judgment was based. 
Discussion
          Capps contends the trial court abused its discretion when it rendered summary
judgment in favor of the State. We disagree. 
           I.        Standard of Review
          In reviewing a summary judgment, this Court must apply well-established standards
which are: (1) the movant for summary judgment has the burden of showing that there is
no genuine issue of material fact and that it is entitled to judgment as a matter of law; (2) 
in deciding whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the non-movant will be taken as true; and (3) every reasonable
inference must be indulged in favor of the non-movant and any doubts resolved in its favor. 
Am. Tobacco Co. v. Grinnell, 951 S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop.
Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). We review the trial court’s summary
judgment de novo. Valence Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005). 
          Furthermore, when the motion for summary judgment is based on several different
grounds and the order granting summary judgment does not specify or state the grounds
relied on, the summary judgment will be affirmed on appeal if any of the grounds presented
in the motion are meritorious. Western Investments, Inc. v. Urena, 162 S.W.3d 547, 550
(Tex. 2005); Carr v. Brasher, 776 S.W.2d 567, 569 (Tex. 1989).
          For a party to prevail on a motion for summary judgment, that party must
conclusively establish the absence of any genuine question of material fact and that he is
entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); Browning v. Prostok, 165
S.W.3d 336, 344 (Tex. 2005). To establish entitlement to judgment as a matter of law, a
movant must either prove all essential elements of his claim or defense, MMP, Ltd. v.
Jones, 710 S.W.2d 59, 60 (Tex. 1986), or negate at least one essential element of the non-movant's cause of action. Shaw v. Moss, 67 S.W.3d 836, 842 (Tex. 2001); Randall's
Food Mkts, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the movant has
established a right to summary judgment, the non-movant has the burden to respond to
the motion for summary judgment and present to the trial court any issues that would
preclude summary judgment. City of Houston v. Clear Creek Basin Auth., 589 S.W.2d 
671, 678 (Tex. 1979); Barbouti v. Hearst Corp., 927 S.W.2d 37, 64 (Tex.App.–Houston
[1st Dist.] 1996, writ denied). 
          II.       Bill of Review
          Because they involve the same claim or cause of action, we analyze Santa Cruz’s
original petition and petition for bill of review together. A bill of review is an equitable
proceeding to set aside a judgment that is not void on its face but can no longer be
challenged by motion for new trial or appeal. Caldwell v. Barnes, 154 S.W.3d 93, 96 (Tex.
2004); King Ranch Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex. 2003), cert. denied, 541
U.S. 1030, 124 S.Ct. 2097, 158 L.Ed.2d 711 (2004). The fact that an injustice has
occurred is not sufficient to justify bill of review relief. Wembley Inv. Co. v. Herrera, 11
S.W.3d 924, 927 (Tex. 1999). A bill of review is designed to prevent manifest injustice. 
Alexander v. Hagedorn, 148 Tex. 565, 226 S.W.2d 996, 998 (1950).
          To prevail on his bill of review, Santa Cruz was required to plead and prove (1) a
meritorious claim or defense to the underlying cause of action, (2) that he was prevented
from making due to the fraud, accident or wrongful act of his opponent, and (3) that he was
not at fault or negligent.


 Caldwell, 154 S.W.3d at 96; Hagedorn, 226 S.W.2d at 998. This
preliminary showing of entitlement is essential in order to assure that valuable judicial
resources will not be wasted by conducting a spurious “full-blown” examination on the
merits. Baker v. Goldsmith, 582 S.W.2d 404, 408 (Tex. 1979). 
          In the context of a bill of review, a defendant is entitled to a summary judgment
against the proponent of the bill of review if he can establish, as a matter of law, the
absence of any of these three elements. Hartsfield v. Wisdom, 843 S.W.2d 221, 223
(Tex.App.–Amarillo 1992, pet. denied) (citing Montgomery v. Kennedy, 669 S.W.2d 309,
311-12 (Tex. 1984)). Appellee contends the trial court did not err in granting its’ motion for
summary judgment, or in denying Santa Cruz’s motion for summary judgment, because
Santa Cruz cannot establish, as a matter of law, at least one essential element of his
cause of action. See Shaw v. Moss, 67 S.W.3d at 842.
          A.       Meritorious Claim of Defense
          For purposes of our analysis we will assume, without finding, that Capps has plead
a meritorious defense to the underlying cause of action and has raised, by competent
summary judgment evidence, more than a scintilla of evidence to prove those allegations.
          B.       Fraud, Accident or Wrongful Act
          In addition to a meritorious defense, Santa Cruz must also establish that he was
prevented from making that defense by the fraud, accident or wrongful act of the Appellee. 
Furthermore, that fraud must be extrinsic fraud, as opposed to intrinsic fraud, in order to
prevail on his petition for bill of review. King Ranch, 118 S.W.3d at 752; Tice v. City of
Pasadena, 767 S.W.2d 700, 702 (Tex. 1989). Extrinsic fraud “is fraud that denie[s] a party
the opportunity to fully litigate at trial all the rights and defenses that could have been
asserted,” King Ranch, 118 S.W.3d at 752, and includes “wrongful conduct practiced
outside the adversary trial–such as keeping a party away from court, making false
promises of compromise, denying a party knowledge of the suit–that affects the manner
in which the judgment is procured.“ Ince v. Ince, 58 S.W.3d 187, 190 (Tex.App.–Waco
2001, no pet.) (citing Hagedorn, 226 S.W.2d at 1002). Extrinsic fraud is “collateral” fraud
in the sense that it must be “collateral” to the matter actually tried and not something which
was actually or potentially in issue in the trial. Montgomery, 669 S.W.2d at 312. 
          In contrast, intrinsic fraud “relates to the merits of the issues which were presented
and presumably were or should have been settled in the former action.” Tice, 767 S.W.2d
at 702. Intrinsic fraud “is inherent in the matter considered and determined in the trial
where the fraudulent acts pertain to an issue involved in the original action, or where the
acts constituting the fraud were, or could have been litigated there.” Montgomery, 669
S.W.2d at 313. 
          Here, Capps seeks to set aside an agreed judgment on the State’s claim for costs
related to Santa Cruz’s support, maintenance, and treatment incurred in 1997. As such,
the agreed judgment represents a judgment on the merits of the State’s claim and is
“conclusive, not only on matters actually litigated, but it is also conclusive on every other
matter that could have been litigated and decided as an incident to or essentially
connected with the subject matter of the prior litigation.” Freeman v. Cherokee Water Co.,
11 S.W.3d 480, 483 (Tex.App.–Texarkana 2000, no pet.). Further, agreed judgments are
contracts that end all controversy between the parties. Pate v. Pate, 874 S.W.2d 186, 188
(Tex.App.–Houston [14th Dist.] 1994, writ denied). Thus, intrinsic fraud, here, would
encompass any legal claim or defense available to Capps including any alleged fraud by
the State that pertained to any issue related to the State’s claim for reimbursement that
was, or could have been litigated, in the State’s claim proceeding. 
          Before and after the State initiated its claim, Capps contends the State misled
and/or failed to advise either Santa Cruz or himself of the availability of trust fund accounts
and/or other safekeeping procedures which, if implemented, might have sheltered a
substantial portion of Santa Cruz’s estate from the State’s claim. Specifically, Capps
asserts that the State miscalculated Santa Cruz’s monthly fee for 1997, failed to give Santa
Cruz notice of the 1997 fee increase, and failed to advise Capps that $50,000 of Santa
Cruz’s estate could have been exempt from claims for reimbursement under section
552.018 of the Texas Health & Safety Code if the funds had been placed in a trust. 
Whether the State’s claim was subject to reduction or elimination due to a miscalculation,
failure to give notice of a fee change, or failure to inform Capps of a statutory trust
exemption goes to the very essence of the validity and/or amount of the State’s claim. 
These issues could have been litigated in the State’s original claim proceeding. As such,
Capps alleges intrinsic fraud as opposed to extrinsic fraud. See, e.g., In re the Office of
the Attorney General, 193 S.W.3d 690, 693 (Tex.App.–Beaumont 2006, no pet.); McIntyre
v. Wilson, 50 S.W.3d 674, 680 (Tex.App.–Dallas 2001, pet. denied). 
          Capps also claims the State owed Santa Cruz and/or Capps a fiduciary duty as
Santa Cruz’s caretaker and breached that duty by failing to advise Capps of a change in
Santa Cruz’s monthly fee or his legal rights regarding a possible trust exemption. In Texas,
the law recognizes that there is no duty to inform others of the requirements of the law
because all persons are presumed to know the law. E. H. Stafford Mfg. Co. v. Wichita
School Supply, Co., 112 Tex. 650, 23 S.W.2d 695, 697 (1930). Nevertheless, if the State
had any duty to advise Santa Cruz or Capps pursuant to an existing fiduciary relationship
and failed in that duty, the breach of such a duty could have been alleged and litigated in
the State’s claim proceeding. Thus, these claims are also intrinsic fraud allegations. 
Because Capps could have litigated these claims in the original action, the agreed
judgment is res judicata as to all these claims. See Igal v. Brightstar Information
Technology Group, Inc., 250 S.W.3d 78, 86 (Tex. 2008); Barr v. Resolution Trust Corp.,
837 S.W.2d 627, 628 (Tex. 1992). 
          After Capps was appointed guardian and the State filed its certified claim, Capps
asserts State representatives informed him on several occasions that he could do nothing
to prevent VSH from seeking reimbursement from Santa Cruz’s earnings and they were
unaware of any defenses to the State’s claim. After Capps’s appointment and the State
initiated an adversarial proceeding against Santa Cruz’s estate, no fiduciary relationship
existed between the State and Capps that required the State to give Capps legal advice
on how to defend against the State’s claim and/or shelter Santa Cruz’s assets. See Taub
v. Houston Pipeline Co., 75 S.W.3d 606, 622 (Tex.App.–Texarkana 2002, pet. denied). 
Moreover, the State representatives’ statements to Capps to the effect that he could do
nothing to prevent VSH from seeking reimbursement from Santa Cruz’s earnings or that
they were unaware of any defenses to the State’s claim were, at most, legal opinions–not
fraudulent misrepresentations. See Taub, 75 S.W.3d at 621-22. As such, the statements
are not actionable. Id. 
          Capps does not assert, and the record does not support, any allegation that he was
denied an opportunity to investigate any facts related to the amount or validity of the
State’s claim. Rather, Capps contends simply that the State failed to give him certain legal
advice. As guardian and attorney for the estate,


 see Insurance Company of North
America v. Westergren, 794 S.W.2d 812, 814-15 (Tex.App.–Corpus Christi 1990, orig.
proceeding [leave denied]), Capps was equally or, in most cases, better versed in the law
than the State representatives with whom he spoke and certainly more qualified and
motivated to undertake legal research to determine the defenses available to his ward and
client. 
          Santa Cruz’s reliance on Jones v. Texas Department of Protective and Regulatory
Services, 85 S.W.3d 483 (Tex.App.–Austin 2002, pet. denied) is inapposite. In Jones,
petitioner sought a bill of review and alleged she involuntarily signed an affidavit
relinquishing her parental rights because of representations by state representatives that,
if she did sign, her daughter would be placed with her cousin. Id. at 492-93. Her attorney
was not present when she signed the affidavit. Id. Subsequently, her daughter was not
placed with her cousin but in foster care. 85 S.W.3d at 486. Here, the State made no
misrepresentations of fact to either Santa Cruz or Capps and Santa Cruz’s interests were
represented by his guardian and attorney, Capps, and a second attorney, Yandell, at the
signing of the agreed judgment. 
           Intrinsic issues underlying a judgment attacked by a bill of review have no probative
value on the type of fraud necessary to support a bill of review, King Ranch, 118 S.W.3d
at 752, because each party must guard against adverse findings on issues directly
presented for decision. See Boaz v. Boaz, 221 S.W.3d 126, 131 (Tex.App.–Houston [1st
Dist.] 2006, no pet.). At most, Capps’s allegations assert intrinsic fraud. As such, Capps
should have “litigated the question[s] at the time rather than join in having judgment
entered against him and [permitting it] to become final before deciding to litigate it by bill
of review.” McIntyre, 50 S.W.3d at 694 (quoting Pollard v. Steffens, 161 Tex. 594, 343
S.W.2d 234, 240 (1961)). Accordingly, because Capps does not allege extrinsic fraud but
rather only argues intrinsic fraud, as a matter of law, he cannot successfully maintain a bill
of review on these grounds. 
          C.       Negligence
          Having concluded that Santa Cruz was not prevented from asserting a defense by
extrinsic fraud, we need not decide whether his petition seeking to set aside the agreed
judgment also fails to demonstrate that he is without fault or neglect. 
Conclusion
          Capps had the burden of proof on the issue of extrinsic fraud and his failure to make
a prima facie case defeats his action for a bill of review. Capps’s issues are overruled and
the trial court’s judgment is affirmed.




                                                                                      Patrick A. Pirtle

                                                                                            Justice